[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
In this case, plaintiff Wilder Group, Inc., a real estate broker licensed in the State of New York, has sued defendant Benjamin B. Byers, a real estate broker licensed in the State of Connecticut, to recover the sum of $18,000, which it claims to be owed as a commission in connection with the sale of the Old Saybrook Motor Inn and Restaurant under the terms of a co-brokerage agreement between them. According to the plaintiff, the agreement provided that the plaintiff would be paid a commission of three percent (3%) of the gross sales price in the event that the Inn and/or the adjacent restaurant were sold to any buyer who was introduced to the property by the plaintiff. Having produced a number of potential buyers for the property, including the agent of its ultimate purchaser, the Broadway Saybrook Company, which purchased the property for approximately $600,000 in September of 1993, the plaintiff now claims that it is entitled to its three percent commission, in the amount of $18,000, which the defendant has refused to pay it, in alleged violation of their agreement.
The defendant has now moved this Court under Section 143 of the Connecticut Practice Book to dismiss this case on the ground that the Court lacks subject-matter jurisdiction over the plaintiff's claim. He contends, more particularly, that since the plaintiff is not a duly licensed Connecticut real estate broker, as required to maintain an action for a brokerage fee by General Statutes § 20-325a(a), the plaintiff has no standing to prosecute this action, and thus this Court has no jurisdiction to entertain it. CT Page 2013
 I
A motion to dismiss is the "proper vehicle for claiming any lack of jurisdiction in the trial court."Upson v. State, 190 Conn. 622, 624-25 n. 5 (1983) (quotingCarpenter-Planning and Zoning Commission, 176 Conn. 581,587 n. 5 (1979)); Conn. Prac. Bk. §§ 142, 143. "Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Conn. Prac. Bk. § 145. If it is clear on the face of the record that the court lacks subject-matter jurisdiction, a motion to dismiss must be granted. Upson v. State, supra,
624.
Standing is a matter of jurisdiction which cannot be conferred by the parties. Housing Authority v. Local 1161,1 Conn. App. 154, 157, cert. denied 192 Conn. 802 (1984). If a party is found to lack standing, the court is without subject-matter jurisdiction to determine the cause.Tomlinson v. Board of Ed. of City of Bristol, 226 Conn. 704
(1993); Christ-Janer v. A.F. Conte Co., 8 Conn. App. 83,90 (1986).
An entity is without standing to bring an action when it is specifically forbidden by statute from so doing.Poly-Pak Corporation of America v. Barrett, 1 Conn. App. 99,103 (1983). If the entity brings the action notwithstanding the statute's proscription, the action must be dismissed because the court has no jurisdiction to entertain it. Id.
 II
The defendant bases his motion to dismiss on General Statutes § 20-325a(a), which provides that:
 No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after CT Page 2014 October 1, 1971, to recover any commission, compensation, or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter.
Codified as part of Chapter 392 of the Connecticut General Statutes, entitled "Real Estate Brokers, Salesmen and Appraisers," Section 20-325a(a) can only be read to bar the instant action if two conditions are met: (1) that at the time it did the act or rendered the service for which it now seeks to recover a commission, the plaintiff was not licensed as a real estate broker under the provisions of Chapter 392; and (2) the act or service in question was one which, at the time it performed, was prohibited under the provisions of Chapter 392 except by persons duly licensed thereunder. For the following reasons, the Court concludes that the instant action is barred by Section 20-325a(a) because both of the foregoing conditions have been met.
 A.
At all times pertinent to this action, Chapter 392 has contained the following relevant provisions: (1) General Statutes 20-311a, which formally establishes the Connecticut Real Estate Commission in the State Department of Consumer Protection; (2) General Statutes § 20-311b, which empowers the commission to "authorize the department of consumer protection to issue licenses to real estate brokers, real estate salesmen, real estate appraisers and residential appraisers, as provided in this chapter . . .;" (3) General Statutes 20-312(a), which provides that "[n]o person shall act as a real estate broker, real estate salesman, real estate appraiser or residential appraiser without a license issued by the commission, unless exempted by the provisions of this chapter[;]" and (4) General Statutes § 20-311, which adopts the following definitions for use in Chapter 392:
 (1) "Real estate broker" means any person, partnership, association or corporation which, for another and for CT Page 2015 a fee, commission or other valuable consideration, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of, an estate or interest in real estate . . . . "Real estate broker" also includes any person, partnership association or corporation employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a stated salary, upon commission, upon a salary and commission basis or otherwise to sell such real estate, or any parts thereof, in lots or other parcels, and who sells or exchanges, or offers, attempts or agrees to negotiate the sale or exchange of, any such lot or parcel of real estate;
— — —
 (8) "Person" means and includes any individual, partnership, association or corporation;
 (9) "Commission," unless the context otherwise requires, means the Connecticut real estate commission.
From the foregoing provisions, it must first be concluded that no person, regardless of his background, credentials or other qualifications, may act as a real estate broker in the State of Connecticut unless he first obtains a valid Connecticut real estate broker's license from the Connecticut Real Estate Commission. The statutory proscription against engaging in brokerage activity of any kind or description without such a valid Connecticut license is clear and unequivocal. It makes no exception for anyone, and thus applies with equal force to persons with no training or experience in the real estate business and to competent, experienced real estate brokers who are licensed in other states. All must obtain their Connecticut real estate broker's licenses from the Connecticut Real Estate Commission before they can do CT Page 2016 business as brokers in Connecticut.
This conclusion is confirmed by Section 20-317 of the General Statutes, entitled "Licenses to nonresidents." Section 20-317 provides in relevant part as follows:
 A nonresident of this state may become a real estate broker by conforming to all of the provisions of this chapter. The commission shall recognize a current, valid license issued to a currently practicing, competent real estate broker . . . by another state as satisfactorily qualifying him for a license as a real estate broker . . . under this chapter, provided the laws of the state of which he is a resident requires that applicants for licenses as real estate brokers shall establish their competing by written examinations and permit licenses to be issued to residents of the state of Connecticut, licensed under this chapter, without examination and provided further that the licensure requirements of such state are substantially similar to, or higher than those of this state, and such broker . . . has no disciplinary proceeding or unresolved complaint pending against him. If the applicant is a resident of a state which does not have such requirement, such applicant shall be required to pass the Connecticut portion of the real estate . . . examination . . . . . Every nonresident applicant shall file an irrevocable consent that suits and actions may be commenced against such applicant in the proper court in any judicial district of the state in which a cause of action may arise or in which the plaintiff may reside by the service of process or pleading, CT Page 2017 authorized by the laws of this state, or the chairman of the commission.
So written, Section 20-317 plainly contemplates that competent real estate brokers who are duly licensed and currently practicing in other states with licensing requirements and reciprocity provisions comparable to Connecticut's will be given preferential treatment in obtaining their Connecticut licenses. By the same token, it obviously requires that any out-of-state broker wishing to extend his brokerage business to Connecticut must first present his credentials to the Connecticut Real Estate Commission, obtain his Connecticut broker's license and file his irrevocable consent to be sued in the courts of this State. An out-of-state broker may not simply come into Connecticut and do business as a real estate broker under the putative authority of his valid out-of-state broker's license.
The upshot of the foregoing observations for the instant case is readily apparent. Though the plaintiff was a duly licensed real estate broker in the State of New York at the time it engaged in the activity for which it now seeks to recover a commission, it was not so licensed in the State of Connecticut. It therefore had no right to do business as a real estate broker in Connecticut, or to do acts or render services in that capacity, at the time of the conduct here at issue.
 B.
It remains, of course, to be determined whether or not the plaintiff's alleged act of procuring a purchaser for the Old Saybrook Motor Inn and Restaurant in exchange for a commission constituted the doing of an act or the rendering of a service which was prohibited to persons not licensed under Chapter 392. For the following reasons, the Court concludes that it was so prohibited, and thus that the plaintiff lacks standing to prosecute this action under General Statutes § 20-325a(a).
The prohibitory provisions of Chapter 392 are very simple and straightforward. They expressly forbid any "person . . . [to] act as a real estate broker . . . without a license issued by the commission;" General CT Page 2018 Statutes § 20-312; and describe a real estate broker as "any person . . . or corporation which, for another and for a fee, commission or other valuable consideration, lists for sale, sells, exchanges, [or] buys . . ., or offers or attempts to negotiate a sale, exchange [or] purchase . . . of any estate or interest in real estate[.]" General Statutes § 20-311(1).
As described in the plaintiff's own Complaint, the activities for which it now seeks to recover a commission are plainly activities it was prohibited from engaging in without a valid Connecticut real estate broker's license. To reiterate, it claims to have entered into a "co-brokerage agreement" with the defendant, Benjamin B. Byers, whereby it "would be paid a commission of three percent (3%) of the gross sales price in the event that the Old Saybrook Motor Inn and/or the adjacent restaurant were sold to any buyer introduced to the property by [itself]. "Id., Count I, §§ 5, 6. Pursuant to that agreement it claims to have "produced a number of potential buyers for the property," including the agent of the company which ultimately purchased it. Id. §§ 6, 7.
It is of no small moment that the plaintiff itself describes its agreement with the defendant as a "co-brokerage agreement." Such an agreement, to put it simply, is an arrangement by which two brokers, one of whom lists a property for sale on behalf of its owner, agree to split any fee for the sale of the property if the non-listing broker produces the purchaser who ultimately buys it. Under a co-brokerage agreement, though each broker performs a distinct function, both clearly serve as "real estate brokers" within the meaning of Chapter 392. When the property goes on the market, the listing broker serves as a real estate broker by listing the property for sale, and thereby offering or attempting to negotiate the sale of the property to prospective buyers. The non-listing broker similarly attempts to negotiate the sale of the property in question by introducing his customers to it, and thereby attempting to interest them in it. When a potential purchaser is identified, both brokers typically play an active role — the listing broker by communicating with the property owner/seller, the non-listing broker by communicating with his client, the potential buyer, and both brokers by communicating with each other — in CT Page 2019 negotiating the final details of the sale. Here, then, by the plaintiff's own allegations, its role in the transaction for which it now seeks to recover a commission was that of a "co-broker," whose activities in that capacity were prohibited without a valid Connecticut broker's license.
The plaintiff's characterization of its agreement with the defendant as a "co-brokerage agreement," moreover, was no mere act of mislabeling, for as further described in the plaintiff's complaint, the particular acts for which it now seeks compensation were plainly the acts of a "real estate broker," within the meaning of General Statutes §§ 20-311 and 20-312. What the plaintiff claims to have done for its commission was to "introduce to the property" several potential purchases, including the agent of its ultimate purchaser, the Broadway Saybrook Company. To introduce a person to a property is quite different from merely introducing him to the owner of the property so that the owner can deal with him directly and negotiate a sale himself. Rather, it implies that here, as in the standard co-brokerage agreement, the plaintiff, as non-listing broker, showed and described the property itself to the ultimate buyer, thereby interested the buyer in purchasing the property, then made contact with the defendant broker to convey the buyer's offer and negotiate the sale. Throughout this process, the non-listing broker served as the conduit between the potential buyer, which remained its client, and the listing broker, who was the agent of the seller.
The above-described conduct on the part of the plaintiff — taking an active role in finding a purchaser for the defendant broker's listed property — was brokerage activity for which a Connecticut real estate broker's license was required. This is so because it consisted of "offer[ing] or attempt[ing] to negotiate a sale . . . [or] purchase . . . of . . . an . . . interest in real estate." Here, moreover, where the plaintiff claims to have succeeded in its effort to interest a prospective buyer in the property, and his efforts actually culminated in the sale of the property to that person, the plaintiff must logically be found to have played a significant role not only in offering or attempting to negotiate a sale of the property but in selling the property as well. This, too, CT Page 2020 was brokerage activity, within the meaning of Section 20-311, which to reiterate, defines a "real estate broker" as "any person . . . or corporation which, for another and for a fee, commission or other valuable consideration, . . . sells . . . an estate or interest in real estate."
In sum, there is no doubt that the activities of the plaintiff, as described in its complaint, constituted brokerage activities which the plaintiff could not lawfully engage in without a valid Connecticut real estate broker's license.
 C.
Notwithstanding the foregoing analysis, the plaintiff argues that the provisions of Section 20-325a(a) do not apply to acts done or services rendered pursuant to co-brokerage agreements because the parallel provisions of Section 20-325a(b) have been held not to apply to such agreements, See Conda v. Christensen, 11 Conn. App. 557,564 (1987). For the following reasons, the Court disagrees.
In Conda, a licensed Connecticut real estate broker sued another licensed Connecticut real estate broker to recover a commission to which he claimed he was entitled under the terms of a written co-brokerage agreement between them. Before the trial court, the defendant argued unsuccessfully that the agreement was unenforceable because it failed to comply with the written contract requirements of Section 20-325a(b). Section 20-325a(b) provides as follows:
 No person, licensed under the provisions of this chapter, shall commence or bring any action in respect to any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract CT Page 2021 or authorization shall (1) be in writing, (2) contain the names and addresses of all parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by authorized agent.
The Conda Court upheld the trial court's ruling that the foregoing statutory provision does not apply to co-brokerage agreements for two essential reasons. First, it took note of two prior decisions of the Connecticut Supreme Court which had held that the only contracts or agreements which are governed by Section 20-325a(b) are listing agreements between licensed brokers and their non-broker clients. Holmes v. Preferred Properties, Inc., 190 Conn. 808
(1983) (refusing to bar a suit by one licensed real estate broker against another, his former employer, to collect monies allegedly due him under a written contract between them, because the contract was not a listing agreement but a contract of employment); William Pitt,Inc. v. Taylor, 186 Conn. 82 (1982) (finding that the requirements of subsection (b) of Section 20-325a apply only to listing contracts between brokers and their clients, not to sales contracts between them).
Second, it noted that both the statutory language and the legislative history of Section 20-325a(b) are consistent with the Supreme Court's foregoing interpretation of that statute. On this score, the Conda
Court first observed that
 Several comments were made during hearings and debate to the effect that the statute was enacted specifically to protect the unsophisticated home buyer. See, e.g., comments of Mr. David Kotkin, attorney for the Connecticut Association of Real Estate CT Page 2022 Boards that "the bill itself is really oriented to the single family house owner who might be confused by the listing of property . . . ." Conn. Joint Standing Committee Hearings, Insurance and Real Estate, Pt. 1, 1971 Sess., p. 230.
Conda v. Christensen, supra, 563 n. 3. It then took special note of subdivision (5) of subsection (b) of Section 20-325a, which specifically provides that the written contract therein required must "be signed by the owner . . . and the real estate broker." Conda v. Christensen, supra,
§ 63. The latter requirement would obviously be nonsensical if subsection (b) were intended to apply to agreements between brokers and other brokers.
The undeniable logic which led the Conda Court to conclude that subsection (b) of Section 20-325a does not apply to co-brokerage agreements between licensed Connecticut real estate brokers does not extend to or limit the scope of subsection (a) of that statute. Unlike subsection (b), subsection (a) contains no language specifically suggesting that its scope is limited to listing agreements between brokers and property sellers. To the contrary, it expressly bars any suit to recover a commission by any person not licensed under Chapter 392 forany act done or service rendered for which a valid Connecticut real estate license is required.
The full range of brokerage activity which is forbidden to any person who is not licensed under the provisions of Chapter 392 is far broader than that which is specifically forbidden to licensed real estate brokers under subsection (b) of Section 20-325a. It therefore follows that subsection (a)'s unqualified prohibition of fee-recovery lawsuits by those who have engaged in unlicensed brokerage activity must be read more broadly than subsection (b)'s parallel proscription of such lawsuits by licensed brokers whose listing agreements fail to meet the requirements of that subsection. Indeed, in the absence of qualifying language in the statute, subsection (a) must be read to bar fee-recovery lawsuits for unlicensed brokerage activity of every kind and description for which a valid Connecticut broker's license CT Page 2023 is required. This, then, is necessarily broad enough to include the unlicensed rendering of services as a non-listing co-broker, finding a buyer for another broker's listed property.
This interpretation of the statute is not inconsistent with its fundamental purpose, which is to protect innocent non-brokers in their dealings with real estate professionals. To the contrary, the statute's absolute prohibition of fee-recovery lawsuits by unlicensed persons who act either as listing brokers or as non-listing co-brokers strongly encourages such persons not to engage in the real estate business until their competency and character has been established, and thereby promotes the safety and security of the public in their real estate dealings. Whether a non-broker citizen utilizes the services of a licensed broker to help him find a suitable property to purchase or to sell a property he already owns, he relies on the broker's license for the assurance that the advice he receives will be competent and the information he receives will be candid and complete.
In sum, the Court concludes that notwithstanding the limited substantive scope of the prohibition against fee-recovery lawsuits by licensed Connecticut real estate brokers under subsection (b) of General Statutes § 20-325a, as articulated by the Appellate Court in Conda v.Christensen, the prohibition against such lawsuits by non-licensed persons who engage in brokerage activity for which a valid Connecticut broker's license is required is absolute and unlimited. Therefore, because the activity for which the unlicensed plaintiff here seeks to recover a commission was plainly brokerage activity in which he had no right to engage without a valid Connecticut real estate broker's license, he is barred by subsection (b) of Section20-325a from pursuing this lawsuit.
Accordingly, this case is hereby dismissed for lack of subject-matter jurisdiction over the plaintiff's claim.
Michael R. Sheldon, J. CT Page 2024